870 F.2d 654
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert N. BRADBURY, Appellant,
v.
ARMCO, INC., Armco Insurance Group, Inc., Northwestern
National Insurance Company, Wisconsin, Appellee.
 No. 88-1004.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 3, 1988.
Decided Feb. 24, 1989.
 
 Zephia Brown Scarborough (Carolyn P. Carpenter, Clute & Shilling on brief) for appellant.
 Michael Willis Smith (J. Ross Newell, Theodore F. Adams, III, Christian, Barton, Epps, Brent & Chappel on brief) for appellees.
 Before K.K. HALL and BUTZNER, Circuit Judges, and JACKSON L. KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 The plaintiff, Robert Bradbury, appeals the trial court's verdict that the decision by the trustees of his insurance plan denying his claim for disability benefits was supported by substantial evidence and was not arbitrary and capricious. Finding no error, we affirm.
 
 I.
 
 2
 Beginning January 15, 1979, Bradbury was employed as a branch manager by Talbot Bird and Company, an insurance underwriting company. Talbot Bird was a subsidiary of a subsidiary of Armco Insurance Group, Inc. ("AIGI"), which sponsored an employee benefit plan providing disability benefits for enrolled Talbot Bird employees.
 
 
 3
 Under the AIGI plan, employees are eligible for short-term disability pay if they are absent from work because of an accident or illness, and for long-term disability pay if they are completely unable to work and under the care of a doctor. Employees' applications for benefits are reviewed by the trustees of the AIGI plan to determine coverage and eligibility. Employees have a right to appeal the trustees' decision to the Armco Benefit Plan Administrative Committee ("BPAC").
 
 
 4
 Bradbury has a history of manic-depressive illness. He consulted a doctor on July 19, 1984, in connection with the illness. On August 27, 1984, Bradbury was told that his employment would be terminated, effective September 30, 1984. Bradbury argues that he had missed work because of his illness, and he was fired because of his frequent absences. Bradbury contends that he was unable to report to work at all as of September 20, 1984.
 
 
 5
 Bradbury applied for disability benefits under the AIGI plan on September 30, 1986. Bradbury explains that this long delay in his application was caused by his illness--that he was unaware of the fact that he had been completely disabled by manic-depressive illness since 1984 until he consulted his doctor in 1986.
 
 
 6
 After reviewing Bradbury's application for benefits and his personnel file, the trustees of the AIGI plan determined that Bradbury had been on the job until his last effective day at Talbot Bird, September 30, 1984. Therefore, the trustees denied Bradbury's claim for benefits, because he did not meet the test of being absent and unable to work at the time of his termination at Talbot Bird. Bradbury appealed the trustees' decision to BPAC, which confirmed the decision.
 
 II.
 
 7
 This action is governed by the Employee Retirement Income Security Act (ERISA). When Bradbury appealed the trustees' decision to the district court, the sole issue for the court was whether the trustees' decision was arbitrary, capricious, and not supported by substantial evidence. See LeFebre v. Westinghouse Electric Corp., 747 F.2d 197, 204 (4th Cir.1984). Having reviewed the evidence that was before the trustees, the district court affirmed the trustees' decision. Our review of the evidence before the district court indicates no error in the court's decision.
 
 
 8
 The trustees had before them several documents pertaining to Bradbury's disability. The primary document in support of Bradbury's claim was a letter from his doctor stating that Bradbury was entering a manic phase of his illness when the doctor saw him on July 19, 1984, that Bradbury was "let go" on September 30, 1984, and that the doctor saw him again on September 15, 1986. The doctor's opinion was that Bradbury's manic-depressive illness had caused his unemployment. Bradbury submitted no documentation for his claim that he was absent and unable to work as of September 20, 1984.
 
 
 9
 Several documents reviewed by the trustees contradicted Bradbury's claim. Bradbury's personnel file contained no indication that he had been absent from work on or after September 20, 1984. Moreover, the file contained Bradbury's application for unemployment compensation on December 9, 1984, after he had left Talbot Bird, which indicated that Bradbury was able to work as of that date. Had Bradbury been disabled by his manic-depressive illness and been unable to work, he would have been ineligible for unemployment compensation.
 
 
 10
 In short, the trustees had absolutely no evidence before them to indicate that Bradbury had been disabled by his manic-depressive illness and was unable to work before September 30, 1984, his last day on the job at Talbot Bird. Therefore, given their duty to protect the assets of the insurance plan from improper claims, the trustees were justified in denying Bradbury's claim. The trustees' decision was supported by substantial evidence.
 
 
 11
 The district court did not err in affirming the trustees' decision.
 
 
 12
 AFFIRMED.